which is cause number 17-40920. OGA Charters v. Myra Lynn Martinez. Are the parties ready to proceed? Yes, Your Honor. The appellant, you may proceed. Thank The bankruptcy court in this matter correctly found that the debtor has no legally cognizable interest in the proceeds, in the insurance proceeds, the liability insurance proceeds in this case. However, the bankruptcy court erred when it used 105, Section 105, the equity statute, I'll call it, and we'll talk about it more, to pull the proceeds of the liability policy into the estate based on an exhaustion theory. To frame it differently, the bankruptcy court erred by determining, again, by using 105 and determining that the proceeds of this liability insurance policy should come into the estate because that decision will circumvent Texas state law, specifically Soriano, and it will also cause unnecessary surcharge on the proceeds that should be effectively earmarked for the tort claimants. This is a statutory construction case. We should start with the statute, and the statute is Section 541 of the bankruptcy code, where property of the estate is defined. Property of a debtor includes any legal or equitable interest that the debtor has as of the commencement of the case. Go to the case law. We go to Edgeworth by this circuit. Edgeworth articulates the benchmark test for whether proceeds, insurance proceeds, are property of the estate. Looks at the statute, of course, and articulates the test, and the test is whether the debtor would have a right to receive and keep the proceeds when the insurer paid on the claim. It seems to me your statutory argument is missing a step because you're jumping right to Edgeworth and saying, oh, proceeds, if they're not due the debtor, aren't property of the estate. But the first step is, an insurance policy is property of the estate. The policy itself, you would agree, is property of the estate. Absolutely, Your Honor. I apologize for skipping to that step. So that seems to me to be the jurisdictional or the statutory hook that you think is lacking because then Edgeworth just says, well, but the proceeds, if they're not going to go to the debtor, aren't property of the estate. That's almost an exception to the normal rule, the rule that the policy is part of the estate. But then Edgeworth also says, but if the policy is not going to fully satisfy all the creditors for that, then we revert back to the policy being property of the estate. So why doesn't that support the statutory hook of the district court's rule? Well, I think the policy is property of the estate, and that's uniform case law in the it paid for to get protection from the insurance company. But the proceeds, the debtor does not have an interest in. Now, let's be intellectually honest. Edgeworth says, unless it's not going to exhaust, because then you go back to the first step where, like you said, the debtor does have an interest in the policy because it's protecting it from all these lawsuits. Well, I agree with you, Your Honor. I don't think, I understand the dicta, and let's be honest about it. It's there. I'll acknowledge it. It says it refers to secondary impact. It refers to exhaustion. But every one of the Fifth Circuit cases, including Edgeworth, didn't have facts of exhaustion. It's never been applied. I mean, you go with the Babcock case, Edgeworth, Vitek, any of them, there's never been a case that's directly on point when there's an exhaustion of the proceeds. We've cited to a case that I believe is strong persuasive authority. However, it's in the middle district of North Carolina. It's the Beatty case. But that's directly on point. But again, to further respond to you, Your Honor, I think it's uniform that the policy is property of the estate. I do not think the proceeds are, and I don't think Edgeworth stands for that, although there is dicta there. And the reason I believe that it shouldn't be applied as a holding is for two very important reasons. One, if you bring the proceeds into the estate, they will be necessarily surcharged. Landry talks about this, and Edgeworth to a certain extent. Counselor, are you familiar with Salisbury v. Steadfast Insurance Company? Yes. Yes, sir. And didn't we say in that court that only in the limited instance of a mass tort action where hundreds of thousands of claims against the debtor's insurer might exhaust insurance proceeds and thus threaten the debtor's estate and above limits of liability insurance policies have courts held the proceeds of liability insurance policies a property of the bankruptcy estate? I understand that there's discussion. Isn't that what we have here? No, this is not. Well, let me back up. In those mass tort situations, I believe in Chapter 11 cases where you have thousands of creditors and you have a continuing going concern and you have Chapter 11 provisions that allow you to channel, maybe it's asbestos under 524 or otherwise, but to channel proceeds and to have a system set up to mediate and There's a two-party dispute between the settling claimants and the non-settling claimants. This isn't a situation in Chapter 11 where a parent company is going to drop a bunch of money into a debtor and have it preserve its going concerns. It has to deal with multi-state tort injuries. We do have a bus accident and it is tragic. Counsel, are there no assets? No, sir. They're in the registry of the court. I misspoke. There's no other assets. I am looking for the exact settlement. I'm told in the brief there's a settlement. Counsel was asked, I think it was an argument, in the district court, what has happened about the settlement. Do you have a statement, a contract set? Well, that's all it said. Your Honor, and I don't have the What do you mean by there are no assets? Seems to me there's some uncertainty about the ownership of the assets before we talk about the bankruptcy court. I agree, Your Honor. When I was saying no assets, I was talking about the assets other than the insurance proceeds. And the point I was trying to make was that this is really just about insurance proceeds. And in those cases where there's mass tort We haven't decided. Have we decided what the insurance company's proceeds are? I don't know, Your Honor. It's still open? Do the claimant creditors have the same position as the settling creditors so far? No, we're opposed. You're opposed? We think it's not property of the state and they think it's property of the state. Well, maybe there's some uncertainty about the proceeds. I agree, Your Honor. Well, if there's uncertainty, isn't there a reason to say they're proceeds themselves or bankruptcy of state assets? Well, I think that, as I was going to say, if we pull those proceeds in, the ramifications I think are huge. One, I think that you start surcharging because as soon as things come into the estate, they become surcharged by other creditors, meaning the professionals, administrative claims, and also other unsecured creditors. Landry talks about this. As soon as you pull that in... Well, that's all an argument for the bankruptcy court to look at. Unfortunately, I made that argument to him and he cited it against me in the summary judgment, and that's why I'm appealing it. But the other major problem with that is not only that surcharge. Again, it should be earmarked for tort victims. Why? Why should it be? Because the debtor owns the policy, the carrier owns the proceeds, the carrier pays it to a non-debtor, a non-debtor tort victim, and that's what that policy was set up to do. What's been paid to the non-debtor? I'm just saying, in theory, insurance proceeds should be going to the beneficiary, and they shouldn't be surcharged by other general creditors. But here, under your theory, they'd just be going to the people who hired a lawyer the quickest and had the lawyers who made the quickest settlement. But would you be making the same argument if no one had settled before the bankruptcy? No settlements, and the bus company declares bankruptcy. Well, that would depend, I guess, Your Honor. It would depend on what? Well, I think that, again, the cases are when, if Vitek, I believe, was a settlement. If there's an agreement, and a lot of times there are, especially in the mass tort context, there's agreement on ADR resolution and all this kind of stuff. This isn't a typical situation, I think. Meaning that, I just haven't seen a lot of cases where there's settlements prefiling, and there's an accident. But in a lot of these instances, there is a global agreement on how to treat and resolve the mass tort context. And there's not already settlements by the insurance company. And to go back to your comment, Judge, I understand that optic. All I'm saying is, we've got a Texas procedure, and it goes to my second reason that this is flawed if we pull these into the estate. It circumvents what we've got set up under Texas law under Soriano. And I understand that that optic is unfair. And I think that this accident is tragic. I do. But the case law, as acknowledged by this circuit, under Soriano, says that's fair. And it promotes settlements. But the bankruptcy court, you might still win on that, right? I mean, even if it's within the estate, the bankruptcy court said it's not yet going to decide whether there's an encumbrance on these proceeds. That's absolutely true, Your Honor. I mean, if the proceeds are pulled into the estate, we would say that our settlements are still valid. They would argue that it was some kind of executory contract, and it was rejected. We would argue against that and say there's only a ministerial act of having to pay the money, and so it was an executory contract. But not to get into minutia, there are some other issues. But again, I think that these are important policy decisions, especially when you're taking a statute and you're using 105. And that's what the judge did. He acknowledged in his decision that this debtor did not have an interest in the proceeds. A cognizable interest in the proceeds. So he had to use 105. And so we're in the 105 equity area. And so to use 105 to say in a situation of exhaustion based on the dicta that you just referred to, and it's there, in Edgeworth, I'm going to pull it into the estate. I just don't see how 105. I read 105. I don't see how that has anything to do with this lawsuit. Topside or bottom? Well, I don't know how the judge got there with that 105. I mean, he agrees in his decision. He says there's no interest in the proceeds. And then he goes and says there's this exception to the general rule when there's exhaustion. And 105 says that the bankruptcy court may issue any order, process, or judgment that's necessary or appropriate to carry out the provisions of the bankruptcy code. And that has to be what he's been using. And that's what other courts do when they use this exception to the general rule. In some circuits, proceeds are just property of the estate generally, right? That's correct, Your Honor. You don't get into Edgeworth and then an exception. Some circuits, Edgeworth itself is different than other circuits. That's correct, Your Honor. So how do those circuits find that the proceeds are property of the estate? Why do they find? What took do they use? Well, I think that they're using an equitable hook. Now again, there's other circuits like North Carolina that are making it clear as to what I'm saying. And they adopt the reasoning that's in Landry, which is the Middle District of Louisiana, well-reasoned analysis on why this isn't property of the estate. But I would say that that's a flawed analysis. You either have an interest in the proceeds or you don't. And the 105 pulling it in doesn't make any sense unless it's a Chapter 11 context and you have some kind of special rule to do it. In a Chapter 7 context, it makes no sense. And obviously, Your Honor knows a little bit about the differences between Chapter 7 and 11 based on the Davery case. Judge Costa. So, I mean, those are the problems with that rule. And again, there's only that dicta in Edgeworth. And the Texas system has been approved and there's no reason that we should encourage or set up a mechanism for an influx of involuntary cases by non-settling claimants. Thank you, Counsel. Please, the Court. My name is Shelby Jordan. I am a lawyer that represents what they call non-settled. We don't agree there was a settlement, but that's the nomenclature that the appellant used, and I'll just use that. I filed the involuntary on behalf of this group of creditors that the appellant argues has no remedy. My argument, I guess, first is to dispel the idea that there is no possible remedy for 54 of the 65 injured parties on that bus. The second, that one bus rollover in a two-bus company hit the pavement and killed a number of people and injured a large number of people. The suggestion that in those circumstances and in the following circumstances that are unrefuted in this record, that my clients would not have a remedy simply can't be. Everyone agrees there's a common class. My injured parties, I'm their bankruptcy lawyer, by the way, I'm not their plaintiff's lawyer. My group is a member and group of a common class. In fact, we're the vast majority of a common class of injured people. Our claims are undisputed. That is liability to the claims that are undisputed. No one suggests that there was any other cause other than the negligence. In fact, the insurance company is paying based upon the liability. No one can argue that what we come to the court with is a question of liability and do we really deserve to be considered along with the same group in our class. The third is the unquestionable insolvency. That is important even though Edgewood doesn't directly address that. In this case, it's very important. The second that bus flipped on its top and hit the pavement of one bus accident, that company was hopelessly insolvent. It's an important question. The company did have two buses. Yes, there are other assets but not particularly meaningful. There are other assets. There are other methods by which charges to the proceeds can be handled. That bus has been sold. The other assets have been liquidated. There may be claims with respect to insurance policies but the trustee will handle that portion of the argument. I'm not here to do that. There is no question of exhaustion. Even the insurance company admits that they are going to pay the $5 million to the $12 million they selected under some criteria that we have no idea about but that there is no other money to pay 54 death and injury parties and creditors to this estate unless there is a method by which the public policy of bankruptcy is invoked. I believe that I have done that. I don't understand that the appellant is arguing that this does not apply under the statute and that the involuntary petition is correct in taking the position that whether the policy is now part of the estate or not but the proceeds at least are going to be in the bankruptcy estate and that the petition was properly granted to establish a bankruptcy proceeding. That is not disputed, is it? Judge, it is not disputed that the policy that is bought and paid for by the debtor is owned by the estate. The question then becomes, some jurisdictions do say all proceeds come to the estate. The circuit does not say that. I do agree that the issue is timely and properly brought before the court, Judge. In fact, the issue that I want to address most importantly is the idea that these proceeds are still there. We have one case, the Fuzuzi case, that has been cited and some others where the proceeds were distributed and there was a question of going back to get them. We are not there. When I was called and I was told about the accident and I was told what was happening and I was told that letters had been sent to the insurance company, this is in the record, to invite you to a settlement conference overall and letters responded saying we will be there then letters from the insurance company saying never mind. And the never mind put, I guess, the target on the backs of the 54 people who did not participate in the meeting. All of the money of the policy of the insurer, all of that money is now in the registry of the court. It is and there was the reference by the appellant to the fact that it is earmarked and, in fact, Edgewood makes the comment that when you talk about proceeds of a policy that is aimed to a particular group of people, I believe Edgewood says that the distribution to creditors other than victims would be improper. And that is true. But that is all the mass tort cases. We always channel those proceeds into a trust for the injured, not for other unsecured creditors or vendors. So there is nothing about this case that distinguishes it from what Edgeworth says the law is, nor is there anything that distinguishes it except the vast amount of dollars and other things that the mass tort cases allow, setting asbestos aside because Congress gave asbestos some special rights. But look at the silica cases, look at all of them from the big ones down to the little ones to these 54 claimants. They are all the same. The policy is exactly the same, which is why bankruptcy lawyers are involved in this type of process and it is not all plaintiff's lawyers. The law says that the public policy is to assure fair and equitable distribution of whatever assets would be available. That is exactly the anti-result and the counterintuitive reading of the Fifth Circuit law that would suggest that in some fashion these injured parties don't have a right to that public policy to have a bankruptcy judge supervise, which by the way this judge has not made a decision on whether or not they have an encumbrance or they have a contract or that they have something non-rejectable. So all of those still are pending, but at least at this point the supervision by someone other than an insurance company and a group of four or five plaintiff's firms getting together, dividing up the money, and then telling the rest, sorry but you don't get anything, has been replaced by what public policy says needs to be replaced, and that is to impose the bankruptcy code on these parties to allow a proper and orderly supervision and liquidation of the companies so that everyone has a fair share to get their interest. But assuming there were these contracts entered into before the bankruptcy, I know there is some dispute about that, but let's say there is perfectly valid contracts signed before the bankruptcy with these settlements. That is not the debtor who entered into those contracts. I know when a debtor does that right before bankruptcy there are all kinds of ways to undo that. What is the process of undoing those agreements? I will let the trustee maybe more directly tell you, but here is my response, Your Honor, is that the answer to that, the Vazuzi case actually has that circumstance where they went out and they settled and they got a court order ordering the settlement and the debtor filed a bankruptcy and says I want to take it back. And Vazuzi didn't answer your question directly because what they said was, well let's just look. I mean these proceeds aren't property of the estate because it was one creditor, one claim, and no allegation of these exhaustion issues. But from the standpoint of, Your Honor, answering your claim specifically, all that would be left would be for my clients to impose upon the trustee to exercise some form of avoidance. For instance, we know avoidable preferences. If you get paid even on a judgment within 90 days of a bankruptcy, then that is a matter that comes back into the estate. We pro rata distribute. This one would be the same thing. Let's assume there was a settlement. We don't think there was. There were no filed Rule 11s. The minors didn't have any orders by the judge saying we approve your settlement on behalf of minors. None of that existed, but if it did, we would be in the same circumstance as avoidable preference, and that is a member of a class receives a greater distribution within 90 days of a bankruptcy than he would otherwise. And that then comes back into the estate, which is what we are suggesting, and that would come back into the estate to be distributed among creditors. Now, I don't have a case about that because I don't think any of them have gotten that far, but that would be my argument, Your Honor, if I were asked that question at a bankruptcy court where that had actually occurred. Those issues might actually arise in this case, but the judge was astute enough to say, well, I'm going to give you this. I'm going to follow Edgewood. I'll listen to what Sam Lake says in his case that translates Edgewood into a practical circumstance, but I'm not going to rule on the other issues. Let's find out whether I'm right here, and if I am, let's decide where we are in that process. Because quite frankly, the judge could say, I find that they've all been settled. And then say, but I find that there's an avoidance action available. Or, I don't find any avoidance action available. They settled. You can't reject their contract. It's not executory. And as a result, I'm going to leave the money in the application of those settlements as it is. Thank you, Your Honor. Good morning, Your Honor. It's Mike Schmidt, the Chapter 7 Bankruptcy Trustee in this case. May it please the Court. Your Honor, Judge Costa, in answer to your question, if you have, they call them settlements. I don't call them settlements because they never follow Rule 11 of the Texas Rules of Civil Procedure. Judge Raveley, which requires their settlement to be put in the state court case, the Texas District Court case that they filed. They didn't do that. The evidence is clear. The summary judgment evidence shows under an admission by the insurance company that no settlement was ever filed in any of those cases. So they're unenforceable under Rule 11 of the Texas Rules of Civil Procedure. And as a matter of law, under 365 of the Bankruptcy Code, they were automatically rejected 60 days after the order of relief was entered in the case. They're deemed rejected as a matter of law. Now what would I do as a bankruptcy trustee to go after those? Even though the debtor wasn't a party to the contracts. But it's the debtor's lawsuit, Your Honor. He's a necessary party to the lawsuit because he's the defendant. It's not a he, it's a company, Your Honor. The bus company was the defendant in the state court lawsuits because you can't sue in Texas directly the insurance company like you can in Louisiana. So there were state lawsuits or they just settled before even filing? There were state lawsuits, Your Honor, filed. And that's in our brief and in the record as well, Your Honor. And since you mentioned the state lawsuits, my only question in connection with that is, and everybody but me probably knows the answer, but how is a bankruptcy court going to handle the resolution of the claims? In other words, you have tort victims, a mass tort, and obviously that gets handled in state courts all the time. So they're going to become like creditors in a bankruptcy court. While liability is admitted, damages are undetermined. So how does a bankruptcy court go about determining damages? Good question, Your Honor. Your Honor, to begin with, I've been doing this chapter seven trustee work for over 25 years. I have a lot of experience with claims resolutions. The bankruptcy court has a lot of experience with claims resolutions. It's the process, Your Honor. That's what one of the major tenets of bankruptcy is that we would deal with claims and we make sure under court supervision that there's a fair and equitable distribution to the creditors. There's different procedures that will be followed, Your Honor. For one thing, this isn't the first mass tort in bankruptcy, and there are formulas that can be established as a mechanism to deciding whether someone that has a broken arm gets X dollars versus somebody that had to have back surgery, some more serious injury. But all of this happens within the bankruptcy court. I mean, the bankruptcy court doesn't appoint some kind of a special master. It doesn't say let's have some claims administrator review it. I think that may well happen, yes, Your Honor. I think that the district court, the United States District Court in the McAllen Division will also have to be involved because these are all personal injury claims. But I also think that there's a lot of initial steps that I can take to reach out to all of these 65 claimants to offer these sort of a formula by agreement to resolve everybody's claims. And there are 65 claims, Your Honor, and to briefly address counsel's statement about I'm going to surcharge all of this $5 million, to begin with, Your Honor, the creditors in this case are the 65 injured victims of this horrible, horrific bus accident. The only other creditor is the company that financed the insurance policy which paid the $5 million. They have about an $8,000 claim. Judge Rivlin, in answer to your question, the assets in this case are $5 million in the court registry and $6,000 in my bank account. Not a lot of money but it's still $6,000 and that happened by the sale of the bus, the second bus that wasn't involved and I paid off the lender on that and so they're zeroed out. So the only creditors in this case are the 65 injured parties and that one premium creditor for the payment of the insurance basis. My surcharge I have a statutory fee that's sliding scale but it amounts basically to 3%. So if you took 3% of the $5 million, you get me with about $150,000. The appellants want to surcharge their lawyers they're going to get $2 million. They're going to get 40% of the $5 million and 14 folks are going to get 3 million and 54 million are going to get the shaft because they're going to be zeroed out. It's only because of Edgeworth and the second prong of Edgeworth that enables us to make a fair and equal distribution to these creditors. Without that, without bankruptcy these 54 who are the appellant would like to see zeroed out have no remedy. What about the other side's argument that Chapter 7 should be different than maybe recognizing this exception in Chapter 11? Why, Your Honor? I mean the injured folks are the injured folks the creditors are the creditors. Chapter 11 you reorganize so you can pay the creditors. Chapter 7 we liquidate to pay the creditors. The end result is the same. We're trying to get the creditors the most that we can. Your Honor, I think this court should focus on all 65 of the injured. In a case, and I know you said that's not the case here, but in a case where there were creditors in addition to the personal injury claimants. Only one, Your Honor. No, I'm saying let's assume we have a case where there are other creditors. Yes, Your Honor. Would those creditors be able to make a claim against the I don't know that I know the answer to that, Judge Graves. I have not seen a case on that. When property is property of the estate, it comes in and it's certainly subject to the administrative cost of the case because that's how Congress created bankruptcy. The creditors always have to pay for the administrative cost of the case because there's no other money to do it. That's why you have a trustee up here arguing instead of a trustee having a lawyer to argue because there's no money to pay an appellate lawyer to be up here today. I hope I answered your question, Judge Graves. Yes, sir. Well, with that, if the court has no more questions, I'll yield back my time. Thank you, counsel. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. Back to the administration question. I think that administration is going to be costly and we're hearing two stories here. When property of the estate is property of the estate, it's going to be divided. There is no channeling injunction in this case like they have in mass tort cases that are specially provided for in Chapter 11. Chapter 11 is absolutely different than Chapter 7. I don't think the rules should be different, but they are absolutely different. As your DeBerry opinion points out, you've got the snapshot rule versus post-petition activity. There is a difference, and when you're liquidating, there's not a going concern to provide, so there's not the special provisions of Chapter 11. The settlement is in the record at 1035 to 1142. Those are our settlements. They are Rule 11 agreements. They have not been filed with the court. As we briefed, they are valid, but they aren't a valid contract. They just haven't been enforced because there was an automatic stay. We believe they're valid. This whole talk about even distribution, that's absolutely a policy goal of the Bankruptcy Code, but that assumes that this is property of the estate. I think, again, I understand that there is optic unfairness here, but this is happening, and it has happened under Soriano for years and years and years, and it is acknowledged as a fair system that promotes settlement. It should be worked, it should be deferred to, and some creative exception shouldn't be applied. But isn't that goal of equitable distribution, that's why Edgeworth created that secondary impact exception? I guess I just don't think they created the exception because, again, it wasn't applied. It was just referred to. There was no mention of secondary impact. Again, I don't think they had a situation in front of them like that. Again, I think that was dicta. Again, I think that there will be some surcharge here. Again, I'm not saying that there is some optic unfairness here, and it's a tragic accident, but I believe that the estate system has been working, and we shouldn't promote or have a mechanism. What you're saying about this whole ADR program or whatever, having a special master, that'll be extremely expensive. Right now, that money is not earmarked. There's no channeling injunction. It's not earmarked for the tort victims, and so when it comes back in, it'll trickle to other creditors, including the professionals, I mean the Chapter 7 trustee. I think that's a bad rule to have for the future. Again, it'll promote involuntaries. Thank you. I believe I talked fast. Unless you have any questions, Your Honors, I appreciate your time. Thank you, Counsel.